——— FILED ——— LODGED
——————— RECEIVED

**NOV 16 2020**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ————————————— DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

(Tacoma Division)

IN RE CORONAVIRUS VACCINATIONS
AND PROCLAMATION,
Jennifer Korjus, in her individual capacity and
on behalf of other residents of the State of
Washington,
         Plaintiff,

    v.

JAY INSLEE, in his official capacity as
Governor of the State of Washington
        Defendant.

No.   **3:20-cv-06126-RJB**

COMPLAINT UNDER FRCP 57

Filed: ————————————

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Pursuant to 42 U.S.C. § 1983, Plaintiff Jennifer Korjus (hereinafter "Plaintiff"), pro se,

brings this Complaint against the above-named Defendant, his employees, agents, and successors

in office, and, in support hereof, alleges the following upon information and belief:

**INTRODUCTION**

1. Plaintiff harkens back to happier days and Saturday morning cartoons, "You can't

approbate and reprobate at the same time." Defendant Inslee cannot exercise police power to

place unprecedented constraints on the liberties of Washingtonians and, when the very thing that

could restore those liberties is attainable, use that power to deny Washingtonians' access to it.

2. In recent comments to the Federalist Society discussing the coronavirus pandemic,

Supreme Court Justice Samuel Alito noted that restrictions states have imposed upon its citizens

in response to the pandemic have "resulted in previously unimagined restrictions on individual liberty."[1]

3.   While courts have upheld state rights of police power to require quarantines due to the COVID-19 pandemic using the rationale of Jacobson v. Massachusetts, 197 U. S. 11 (1905), state governors may not twist that power to further encroach upon individual liberties and deny their citizens timely access to vaccination against the pandemic that justified the use of police power ab initio.[2]

4.   Justice Harlan, writing for the majority in Jacobsen, noted that "[a] community has the right to protect itself against an epidemic of disease which threatens the safety of its members." Id., at 27 (emphasis added).

5.   This case seeks to protect and vindicate fundamental liberties that citizens of the United States enjoy free from governmental interference. These liberties are not conferred or granted by the government or government officials as autocrats or monarchs.  These liberties - those specifically articulated and those that are not -  are possessed by the people, reserved to the people, and guaranteed against government interference by the United States and Washington State Constitutions.

6.   This civil rights action is brought under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, Article I §§ 1, 3, 4, and 30 of the Washington State Constitution and Washington State Code RCW 43.06.220, challenging Defendant Inslee's authority to restrict Plaintiff's and Washingtonians' fundamental liberties via

---

[1] https://www.scotusblog.com/2020/11/at-federalist-society-convention-alito-says-religious-liberty-gun-ownership-are-under-attack/
[2] The Governor of the State of Washington is afforded broad but not unlimited powers in a state of emergency pursuant to Washington Code RCW 43.06.220.

(1) the issuance of proclamations restricting freedoms of movement and association - including that in our own homes, and (2) informal, undocumented actions, workgroups and/or pacts with governors of other western states that delay and deny vaccinations against COVID-19 to residents of the State of Washington, which delay and denial results in unnecessary encroachments on life, livelihood, liberty, religion, our "right to protect [ourselves] against an epidemic of disease," the right of self-determination, indeed virtually every right reserved to the people.

7.  Plaintiff, on her behalf and on behalf of all Washingtonians, seeks a declaration that the vaccination evaluation workgroup pact entered into by Defendant Inslee as set forth in this Complaint violates their fundamental liberties and rights secured by the United States and Washington State Constitutions and an order enjoining any action that may delay access by Washingtonians to vaccinations against COVID-19.  Plaintiff, on her behalf and on behalf of all Washingtonians, also seeks a declaration that Defendant Inslee's proclamation dated November 15, 2020, is unconstitutional, without basis in law, and an abuse of power, at least insofar as it applies to gatherings in private residences.  Plaintiffs also seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable laws.

**JURISDICTION AND VENUE**

8.  This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367(a).

9.  Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by Ex parte Young, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

10.  Plaintiff's claim for an award of reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable law.

11.  Venue is proper under 28 U.S.C. § 1391(b) because the Office of the Governor of Washington is located in this judicial district, and Defendant is a resident of the State and region in which this district and division are located.

## PARTIES

12.  Plaintiff is an adult citizen of the United States and resident of Kitsap County in the State of Washington.

13.  Defendant Jay Inslee is the Governor of the State of Washington and was presumptively re-elected, pending certification of the results of the November 2020 election, to serve another term as governor, beginning in January 2021.

14.  Defendant Inslee is sued in his official capacity only.

## STATEMENT OF FACTS

15.  Coronavirus, also COVID-19, is a novel virus that, upon information and belief, first infected humans in Wuhan, China.  It has imbued nearly every aspect of the lives of Washingtonians and of the United States since late March 2020.

16.  The State of Washington has the unfortunate distinction of being the location of the Nation's first confirmed case of COVID-19 in Snohomish County on January 21, diagnosed in a traveler returning from Wuhan, China.

17. Defendant Inslee initially assured the Nation, asserting that Washington had COVID-19 under control: "There is nowhere in Snohomish County that I would be reluctant to take my new granddaughter or my family members." It was well-intentioned folly.[3]

18. COVID-19 is a novel virus. Public health officials and medical professionals have learned about the virus, its virility and transmissibility, measures to stem its contagion, means to test for it, and potential treatment protocols at the expense of our liberty, and, in large part, citizens have understood the sacrifice for the greater good.

19. Defendant Inslee declared a state of emergency following the State's first death to COVID-19 on February 29, 2020, in what would be a devastating outbreak at a nursing home in Kirkland. On March 23, 2020, Defendant Inslee issued a statewide stay-at-home order. The order was initially intended to last for two weeks, but Washingtonians have remained under some constriction since.

20. COVID-19 has taken a particular toll on the nation's elderly and has laid a heavy burden on our health care system and first responders, the former most vulnerable to the ultimate loss of liberty -- death -- and the latter risking potential infection to both treat the infected and stand in as surrogates for family members as patients succumb because of exposure to the virus.

21. Nursing homes, assisted living centers, memory care residential facilities, senior living communities/independent living centers remain profoundly impacted by the lockdowns, permitting only essential support persons and end of life care personnel access. Seniors are relatively isolated, unseen, and untouched even before the lockdowns. The lockdowns, however, impose additional restrictions on seniors' fundamental liberty of association with friends, family,

---

[3] As with many federal, state, and local officials nationwide, Defendant Inslee was seeking to reassure the public. The world had a great deal to learn about this virus.

and each other.  It is a profoundly lonely way to spend the final days or months of one's life.  It is flip to suggest, as Defendant Inslee recently did, that Washingtonians look forward to Thanksgiving 2021, when this Thanksgiving, this Hanukkah, this Christmas, this New Year, may be a loved one's last.  Our time is not Defendant Inslee's to steal under the guise of public health when there are less restrictive means to achieve his stated concerns and when his decisions both prolong constraints to our liberty and our access to that which would free us.

23.  Other citizens also pay dearly by the continued constriction of their liberties:  small business are shuttering; children are losing ground both educationally and developmentally; people are losing their jobs and associated benefits; mental health challenges are on the rise; people are deferring a wide range of preventive and curative health care altogether.  Humans, even introverted ones, are creatures of companionship.  Social interactions are fundamental to survival.[4]  Idle societies are more prone to civil unrest.[5]  Any hour, day, week, or month extending constraints on our freedoms beyond the absolutely necessary is an hour, day, week, and month too long.

24.  Return to normalcy and enjoyment of our Constitutional liberties is dependent on (1) the development of a COVID-19 vaccine that offers immunity to it; (2) readily available, affordable, and effective treatment of COVID-19 infection; (3) wide contraction and survival of infection; or (4) a combination of the above.  Early on, in April, Defendant Inslee noted, "Coronavirus will remain a threat to Washingtonians until we have a vaccine. . . . Even after the [stay-at-home] order is lifted, workplaces will continue to look and operate differently until a COVID-19 vaccine is available."[6]

---

[4] https://www.scientificamerican.com/article/relationships-boost-survival/
[5] https://www.cfr.org/backgrounder/effects-youth-bulge-civil-conflicts
[6] https://twitter.com/govinslee/status/1252752840545546240?lang=en

25.  The unvarnished truth is that a COVID-19 vaccine, once made available to Washingtonians, will be distributed to select populations first and will take unspecified time to reach sufficient needy and at risk populations before life "returns to normal."  The general public presumes that first in line for the vaccine will be front line workers (health care, first responders, etc.) and the most vulnerable, particularly residents of senior living communities.  Vaccinating these populations, without delay, will make a deep dent in the community's ability to return to normal and will quickly mitigate any virus-related burden on our acute care resources.  The corollary is also true:  any delay in making available vaccines accessible to Washingtonians will result in the loss of lives.  Delay of vaccinations in priority groups cascades to delay of vaccinations and attendant continued restrictions of liberties upon Plaintiff and all Washingtonians.

26.  Under the Trump Administration's Coronavirus Task Force, Operation Warp Speed included federal governmental appropriations for vaccine development, production, and distribution.  On or about Monday, November 9, Pfizer and BioNTech, a partnership of U.S. and German pharmaceutical companies, announced that data from their phase 3 trials of a vaccine against COVID-19 demonstrates that its vaccine is both safe and remarkably effective at 90 percent efficacy.[7]  They expect to have sufficient safety data to submit to the U.S. Food and Drug Administration (FDA) by the third week of November and to request Emergency Use Authorization.[8]

---

[7] For reference, the annual flu vaccine ranges between 40-60 percent effective, while the measles vaccine two-dose is approximately 97 percent effective.

[8] https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-announce-vaccine-candidate-against: "Pfizer and BioNTech are continuing to accumulate safety data and currently estimate that a median of two months of safety data following the second (and final) dose of the vaccine candidate – the amount of safety data specified by the FDA in its guidance for potential Emergency Use Authorization – will be available by the third week of November.

27.  On or about Monday, November 16, 2020, Moderna, another biopharmaceutical company, announced that its Phase 3 trials demonstrated that its two-dose COVID-19 vaccine is also not only safe but also enjoys a near 95 percent efficacy.

28.  Under Operation Warp Speed, Army General Gustave Perna has already coordinated the logistics for production and distribution, building laboratory facilities for vaccine production and contracting nationwide with carriers and pharmacies for transportation and distribution, respectively.  That plan includes accommodation for cold transport and storage, as some of the vaccines, including the Pfizer vaccine, are temperature sensitive.[9]  Distribution of the vaccine will begin within 24 hours of the FDA authorizing emergency use of the vaccine; Gen. Perna and his staff are well beyond planning mode; they're executing the plan.[10]

29.  Pfizer and Moderna are a part of "Big Pharma," worldwide biopharmaceutical companies that participate in worldwide biopharmaceutical research and development, navigating regulatory processes in countries worldwide, patenting developments worldwide, and making a profit worldwide off their efforts.

30.  There is no love lost between Big Pharma and the current presidential administration. Moreover, COVID-19 is a worldwide crisis.  Big Pharma has little interest in jeopardizing their international business reputations and profit models to rush unsafe, ineffective vaccines to the public, let alone doing anything that might support the continuity of our current administration's

---

Additionally, participants will continue to be monitored for long-term protection and safety for an additional two years after their second dose."

[9] The Moderna vaccine does not require temperature-controlled transportation and storage.

[10] https://www.cbsnews.com/news/covid-19-vaccine-distribution-60-minutes-2020-11-08/  **Note that the vaccine will not ship to states for which governors have instituted an independent review prior to making it available to residents; as a national resource, it cannot be left to spoil.**

executive orders that negatively impact their bottom lines.[11]  It impugns the integrity both of the scientists within Big Pharma and scientists on the external, independent, worldwide safety panels who reviewed the vaccine trials[12] -- and is irresponsible from a public health perspective -- to persist in fomenting rhetoric challenging the safety or efficacy of COVID-19 vaccines.  It is political, not reasonable.  Indeed, it puts such proselytizers in a Catch-22, with citizens' liberties paying the highest toll.

    31.  Washingtonians, as citizens of the United States, have contributed tax dollars toward Operation Warp Speed.  Defendant Inslee has assured that we will not, however, enjoy access to the vaccine or renewed exercise of our Constitutional liberties in the same manner or rate as will the citizens of the majority of other states.

    32.  Under the auspices of his authority as Governor, Defendant Inslee "announced [on October 27, 2020] that Washington is joining other western states to review the safety and efficacy of COVID-19 vaccines when approved by the FDA. This is an added layer of independent expert review that will help build confidence in the vaccine."[13]

    33.  Among other western states in this pact are the States of California, Oregon, and Nevada.

---

[11] It is well known that US citizens have historically paid top dollar for biopharmaceuticals both directly through drug costs and indirectly through tax dollars that underwrite research and development efforts of Big Pharma to the benefit of patients worldwide.  By Executive Order dated September 13, 2020, all pharmaceutical companies may only charge Medicare patients their "most favored" rate. https://www.whitehouse.gov/presidential-actions/executive-order-lowering-drug-prices-putting-america-first-2/

[12] Subjects in Pfizer's Phase 3 vaccine trials include volunteers worldwide among the more than 40,000 participants in that trial alone.

[13] https://www.governor.wa.gov/news-media/inslee-announces-western-states-workgroup-ensure-safety-and-efficacy-covid-vaccines

34.  Neither Defendant Inslee nor any governor of other states in this pact has identified with any specificity how long their independent expert review will take.  It is clear from Defendant Inslee's statement that such review would not begin until after the vaccine has been cleared for distribution to the citizens of all these United States and the data becomes available for such review.

35.  Defendant Inslee's stated grounds for the additional review is to improve COVID-19 vaccine compliance by Washingtonians, a solution for a problem for which only hyperbole exists.

36.  Any review that might tip the scales on a Washingtonian's decision to take the vaccine may be speedy, as those things go, but cannot be quick in terms of objective time lest it be perfunctory and, therefore, both a waste of public fisc and insufficient to address alleged fears of the vaccines.

37.  Although there are several means less restrictive to individual liberty to assure vaccine compliance than Defendant Inslee's participation in this working group (some are posited below), it is not a constituent's job to craft less restrictive means by which the government could achieve its ends; rather, our public servants' start point should be to consider any restriction on its citizens' liberties with an eye to make such encroachment as limited in time and scope as possible.

38.  FDA is the federal agency responsible for regulating the safety and efficacy of newly developed drugs, devices, and vaccines.

39.  Vaccines go through 3 phases of human clinical trials prior to any emergency use authorization or vaccine approval.  Phase 1 trials test safety in adults, with 20-100 subjects enrolled in a trial --  while they may also test safety at different dose levels, they always evaluate

side effects.  Phase 2 trials involve several hundred subjects to evaluate immune response to the virus and, as with Phase 1 trials, continue to evaluate safety.  A vaccine that demonstrates safety and immune response in Phase 2 is permitted to proceed to Phase 3, in which several thousand subjects participate in random, double-blind testing of the vaccine versus placebo against the virus.  At this stage, safety and efficacy continue to be monitored, but only an independent panel of safety monitors (who are scientists) know whether a subject has had the vaccine or the placebo.  A vaccine does not proceed through or past this phase if safety profiles are poor or if the vaccine does not prove clearly and compellingly efficacious against the pathogen.  It is a high standard -- a higher standard than the FDA applies to emergency use of treatment -- subjecting coronavirus vaccines seeking even emergency use to the same scientific safety and efficacy requirements of a fully approved vaccine.[14]

40.  Vaccines remain subject to robust adverse event monitoring and reporting after any emergency use or final approval.

41.  FDA and the Department of Health and Human Services maintain published webpages that translate a complicated rubric of regulations and guidance governing vaccine development, some specifically related to COVID-19 vaccine development, into more plain English.  They have done the same regarding Operation Warp Speed.

42.  One job of public health professionals is to make complex scientific and medical information understandable to the general public.  Another job of public health professionals is to help people adopt healthy behaviors and to encourage vaccine compliance.

---

[14] https://khn.org/morning-breakout/vaccine-safety-is-focus-of-fda-expert-panels-debate-at-public-meeting/

43.   Defendant Inslee can impose on Washingtonians' liberties far less by directing his public health staff to begin working with those institutions statewide, encouraging vaccine compliance and safety, particularly among those eligible to take the vaccine first, and working on outreach regarding COVID-19 vaccine compliance to Washingtonians generally, none of which require the delay by reason of some independent, Western state workgroup review.  Defendant Inslee could exercise true leadership and reach across the political aisle, collaborating with Republican governors in this public health issue, modeling bipartisanship and constructively moving Washingtonians into 2021.  The science supports doing so.

44.   Should he and his staff fail at the foregoing to encourage coronavirus vaccine compliance among Washingtonians and of vaccine safety profiles, Defendant Inslee may always invoke police powers and even the strategies under Jacobson v. Massachusetts to cajole Washingtonians to take the vaccine during this pandemic.

45.   Alternatively, Defendant Inslee could continue to spend tax dollars of the citizens of Washington on this additional review of the vaccine - but as a review *concurrent* with the vaccine's availability to Washingtonians, not as a condition precedent to our access to it.

46.   Any one of the above would be more aligned with Washingtonians' Constitutional liberties and with Defendant Inslee's prior policy regarding individual objections to vaccines: just last May, the Governor signed a law reducing grounds on which Washingtonians could refuse a comparably effective vaccine, Measles, Mumps, and Rubella, to a disease, measles, that can be particularly deadly to our youth.  Defendant Inslee could call an emergency session of the legislature and pass a legal framework regarding COVID-19 in line with other vaccines required in the State and in consideration of the objections Washingtonians may make against taking it.

47.  Instead, Defendant Inslee has opted to retain - even tighten - draconian constraints on our liberties by participating in the Western states' vaccine evaluation workgroup while, ironically, fostering distrust of the vaccines under development, saying in September when asked whether he himself would take the vaccine, "If all the protocols had been followed and the evidence is in, of course, I'd follow science. It doesn't matter when it happens. I would have to look at the science, not Donald Trump. There isn't one single thing I would ever trust from Donald Trump to be true."[15]

48.  Defendant Inslee is entitled to a personal choice and a personal opinion about Donald Trump.  He is not free to permit personal bias or animus to inform his exercise of police powers as Governor to extend constraints on Washingtonians' liberties and delay Washingtonians' access to COVID-19 vaccines, particularly when there are less restrictive measures, some suggested above (paras. 42-46), to achieve his stated public health goals.

49.  In light of increased testing, rising daily COVID-19 infection tallies, and alleged increases in hospitalizations due to COVID-19, Defendant Inslee again exercised police power to issue additional statewide constraints on association on or about November 15, effective beginning November 16 and to last ostensibly for a 4-week period that encompasses Thanksgiving and the beginning of Hanukkah.[16]

50.  The arm of the police power exercised by Defendant Inslee in this most recent proclamation is quite long, reaching the privacy of our homes.  This proclamation prohibits gatherings inside our homes with anyone who does not reside in the same domicile unless they

---

[15] https://www.arkansasonline.com/news/2020/sep/20/science-politics-at-issue-as-vaccine-nears/?news
[16] https://www.governor.wa.gov/news-media/inslee-announces-statewide-restrictions-four-weeks
Note that the restrictions on restaurants do not begin until Nov. 18.

have each quarantined for 14 days or have quarantined for 7 days and have a negative COVID-19 test within 48 hours of the gathering.  Though not apparent from the news release, violators of this order may be subject to criminal penalties pursuant to Washington State Code RCW 43.06.220(5), putting the noncompliant at risk of a "gross misdemeanor," punishable by up to 364 days in county jail and/or a fine of up to $5,000.[17]  The proclamation is statewide and does not differentiate for differing circumstances in different localities.  It affords individual Washingtonians no discretion whatsoever.

51.   Unlike other states and, perhaps, other areas of Washington, COVID-19 testing in Kitsap County is not available to asymptomatic residents.  Both a referral for a test and meeting CDC guidelines for needing a test (e.g., having some COVID-19 symptoms) are required.[18]  The test mechanisms in Kitsap initially required several days for results, with tests sent to Arizona for processing; results now are purportedly available after 48 hours.  As it stands now, then, one cannot guarantee either getting a test or, having taken it, getting results within the timetable set forth in the proclamation.  An irony is that any test is but a snapshot in time:  a positive patient can have insufficient viral load to test positive; a negative patient may contract it while waiting for test results or, having tested negative, any time thereafter.  If anything is more a red herring to individual patient choices regarding COVID-19 from a public health perspective, it is testing.[19]  It offers only a false sense of security.  The upshot in Kitsap is that, if your loved one does not reside with you, as Plaintiff's 88-year-old mother does not, it is an offense punishable by nearly a year in jail to share what may be her last Thanksgiving with her.

[17] https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-25.8.pdf
[18] https://www.kitsapgov.com/Documents/Kitsap%20County%20testing%20site%20fact%20sheet.pdf
[19] Testing is quite useful from an epidemiological framework and to plan for health system burden.

52.   There is no data regarding the disease's prevalence in the community in February, March, April.  Testing more patients for a disease like COVID-19 will show more disease. The decontextualized data point used alone is misleading at best.  Treatment protocols for the disease have improved steadily through the learning process.  What is more telling is the burden on our acute care facilities.  In Kitsap County, hospitalizations due to the disease are flat, and the County remains well below its safe start target on hospital bed usage generally and usage specifically for COVID-19, this despite two recent outbreaks in one hospital itself.[20]  The inarguable conclusion is that while it is possible that more Kitsap County residents have contracted COVID-19 than they did earlier in the year, they are putting less burden on our health care system as a result of it.

53.   Defendant Inslee, rather than crafting guidelines for county-by-county implementation in consideration of specific, local disease data, chose a statewide, month-long, proclamation imposing criminal penalties instead.

54.   The restrictions in response to COVID-19 have been like Chinese water torture, each slightly more invasive and more constrictive.  Each sounds like a rational proclamation, in light of very broad brushed "scientific data" made available to Washingtonians.  Although a frog placed in a pot of water over an open flame may not realize when the water starts to boil, Plaintiff is not a frog.  Plaintiff feels keenly the constriction on her freedoms; the pot is boiling dry.

55.   Neither Washington state nor local governments, however, have been forthcoming with data sufficient to permit residents to evaluate independently the basis for the restrictions and

---

[20]https://kitsappublichealth.org/CommunityHealth/files/COVID/KitsapCountySafeStartReportCard.pdf

make good choices themselves.  Rather, hiding behind the privacy provisions of the Health

Insurance Portability and Accountability Act ("HIPAA"), the public has not been informed of

non-personally identifiable characteristics of those who have contracted the virus or who, most

tragically, have succumbed to it.  Our governments, under the guise of informing the public,

share data so generic as to make impossible Washingtonians' efforts to align the local experience

with the death and infection rates associated with the virus and to make informed choices:

disclosing that someone who has passed was "an older adult" -- which, apparently, is anyone

over age 65 -- and noting offhandedly that these patients may have had underlying comorbidities.

It is not even clear from these obtuse reports whether our fellow Washingtonians succumbed due

to underlying comorbidities with the virus or to the virus outright.  All of this information --

epidemiological information -- could be shared without identifying any specific individual or

individually identifying information -- which is the underpinning of the privacy interest protected

by HIPAA ab initio.

     56.  The result of broad dissemination of decontextualized and non-specific data is fear

and total dependency on our government.  Fear may inform Washingtonians' dutiful compliance

with more invasive restrictions on our civil liberties.  It also precludes us from the freedom of

self-determination, the freedom to evaluate carefully the risks to self and community against the

benefits of association which in Plaintiff's case with her mother, is surely less and less time to do

so.

     57.  Plaintiff could find no support in either the text of Washington State Code RCW

43.06.220 or its legislative intent that extends the police power of the Governor into private

residences of Washingtonians.

## FIRST CLAIM FOR RELIEF

(Equal Protection - Fourteen Amendment and Washington State Const. Art. 1 §§ 1, 3, and 30)

58.  Plaintiff incorporates by reference all preceding paragraphs.

59.  By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendant Inslee has deprived Plaintiff and Washingtonians of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

60.  Article I of the Washington State Constitution is a Declaration of Rights. Washington State Constitution Article I § 1 provides that "All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights."

61.  Washington State Constitution Article I  § 3 provides that "No person shall be deprived of life, liberty, or property, without due process of law."

62.  Washington State Constitution Article I  § 30 provides that "The enumeration in this Constitution of certain rights shall not be construed to deny others retained by the people."

63.  A brief review of caselaw following the Washington Supreme Court's decision in State v. Gunwall, 106 Wash. 2d 54, 720 P.2d 808 (1986) reflects that the liberties noted in the Washington Constitution are protected at least as fiercely as those under the United States Constitution; it is clear that in no way are Washingtonians to be *more* deprived of rights and civil liberties than are citizens of other states.

64.  As set forth in this Complaint, Defendant Inslee's decision to participate in the Western states' vaccination workgroup review delays Plaintiff's and Washingtonians' access to

available COVID-19 vaccines and, thereby, precludes Plaintiff and Washingtonians from the right noted by Justice Harlan in Jacobson v. Massachusetts "to protect itself against an epidemic of disease which threatens the safety of its members."  This is a right reserved to the people under the United States Constitution and Article I §§ 1, 3, 4, and 30 of the Washington State Constitution.  While Defendant Inslee may have some role in helping the people in this effort, he may not act to thwart it.

65.  As set forth in this Complaint, Defendant Inslee's participation in the Western states' vaccination review workgroup will work to prolong Plaintiff's and Washingtonians' deprivation of fundamental liberties while citizens of other states are not so disadvantaged.  There are several other means of achieving Defendant Inslee's stated purpose that impose fewer constraints on and are less restrictive to the liberties of Plaintiff and of Washingtonians.  Moreover, it is violative of the exercise of his police powers that he constrain Plaintiff's and Washingtonian's liberties while, at the same time deny us the key -- access to the COVID-19 vaccine -- that will restore those same liberties.  The challenged action, therefore, lacks rational basis, is arbitrary, capricious, politically motivated, and effects a palpable invasion of rights secured under the Equal Protection Clause of the U.S. Constitution and Washington State Constitution, Article I  §§ 1, 3, and 30.

66.  As a direct and proximate cause of Defendant Inslee's participation in the Western states' vaccination review workgroup, Plaintiff and Washingtonians suffer immediate irreparable harm, including continued constriction of their Constitutional liberties, unless immediate declaratory and injunctive relief is awarded.

## SECOND CLAIM FOR RELIEF

(First and Fourteenth Amendments - Right of Association; Washington St. Const. Art. I § 4)

67.  Plaintiff incorporates by reference all preceding paragraphs.

68.  Constraints to our freedoms and liberties must be narrowly drawn, limited in time and scope to achieve a specific, legitimate end, and strictly construed.

69.  The right of association is both a fundamental right -- an enumerated right -- and a biological imperative.

70.  The right of association in the First Amendment to the United States Constitution is a right incorporated to the citizens of the states through the Fourteenth Amendment.

71.  Washington State Constitution Article I § 4 provides that the "right of petition and of the people peaceably to assemble for the common good shall never be abridged."

72.  By reason of the aforementioned proclamation of November 15, 2020, acts, policies, practices, procedures and/or customs created, adopted, and enforced under the color of law, Defendant Inslee has deprived Plaintiff and Washingtonians of their right of association in violation of the First and Fourteenth Amendments and Washington State Constitution Article I § 4.

73.  The freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech.  Indeed, implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

74.  Moreover, as recognized by the U.S. Supreme Court, family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Consequently, it is relationships such as these that led to an understanding of freedom of association as an intrinsic element of personal liberty

under the Fourteenth Amendment. As set forth in this Complaint, the proclamation of Defendant

Inslee deprives Plaintiff -- and Washingtonians more broadly -- of the fundamental right of

association in violation of the Fourteenth Amendment and the Washington State Constitution.

75.  As a direct and proximate result of Defendant Inslees' violation of the right to

association under the First and Fourteenth Amendments and the Washington State Constitution

as set forth in this Complaint, Plaintiff and Washingtonians generally suffer and continue to

suffer irreparable harm, including the loss of their fundamental constitutional rights, warranting

declaratory and injunctive relief.

### THIRD CLAIM FOR RELIEF

(Due Process - Fourth and Fourteenth Amendment; Washington St. Const. Art. I § 4;

Washington State Code RCW 43.06.220 )

76.  Plaintiff incorporates by reference all preceding paragraphs.

77.  Defendant Inslee's proclamation makes it a crime, a "gross misdemeanor" punishable

by up to 364 days in jail and/or a $5,000 fine, to associate within one's home with someone who

does not reside there.

78.  Defendant Inslee's proclamation is statewide, not narrowly tailored to a specific area

or part of the state and not narrowly tailored to a framework of risk conditions extant in a

specific area or part of the state.

79.  In the proclamation, Defendant Inslee cites Washington State Code RCW 43.06.220

as authority for issuing this restriction on Plaintiff's and Washingtonians' freedom of association.

80.  While Washington State Code RCW 43.06.2020 does afford Defendant Inslee

specific authorities consonant with his declaration as Governor that Washington has a "State of

Emergency," it is clear that the legislature intended that this power be exercised with a scalpel,

not a bulldozer.  "The governor after proclaiming a state of emergency and prior to terminating

such, may, *in the area described by the proclamation* issue an order prohibiting: . . ."

Washington State Code RCW 43.06.220(1).

81.  Moreover, all language in the legislation refers to actions Washingtonians may

undertake in *public*, authorizing the Governor to circumscribe specific *public* behavior as it

relates to the declared state of emergency.  The sole section that refers to anything remotely

private limits that authority, by any fair interpretation of the statute, to  *public* behavior on *public*

land within the state that the state does not own.  Id. at RCW 43.06.220(1)(b)[21].  In fairness to the

Court, there is a catch-all clause in the statute, section (1)(h), that permits the Governor "[s]uch

other activities as he or she reasonably believes should be prohibited to help preserve and

maintain life, health, property or the public peace."  To construe this generic language as

authority, however, to make criminal familial or other associations within Washingtonians' own

residences is a breathtaking conflict with the plain language of the statute, legislative intent, and

the State constitution.  Indeed, there is an entire body of law under the Fourth Amendment of the

U.S. Constitution that should have received robust debate by the legislature had they intended the

Governor's powers to extend into our homes and to make a specifically enumerated right --

association -- there a crime.  Defendant Inslee exceeded his emergency powers under state law.

82.  The Fourth Amendment of the U.S. Constitution broadly protects citizens in their

homes and is incorporated to the states through the Fourteenth Amendment.  The challenged

proclamation of Defendant Inslee violates Washingtonians' protections under the Fourth and

Fourteenth Amendments in violation of Plaintiff's and Washingtonians' due process rights.

---

[21] "(b) Any number of persons, as designated by the governor, from assembling or gathering on
the public streets, parks, or other open areas of this state, either public or private;"

83.   As a direct and proximate result of Defendant Inslee's violation of the Fourth and Fourteenth Amendment, his violation abridging Washingtonians' right to peaceably assemble as set forth in Washington State Constitution Art. I § 4, and the exercise of powers beyond those permitted in Washington State Code RCW 43.06.220, as set forth in this Complaint, Plaintiff and Washingtonians suffer and continue to suffer irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A) declare that Defendant Inslee violated Plaintiff's and Washingtonians' fundamental Constitutional rights as set forth in this Complaint in conditioning access by Plaintiff and Washingtonians to COVID-19 vaccines on the findings of a Western States workgroup; and

B) declare that Defendant Inslee violated Plaintiff's and Washingtonians' fundamental Constitutional rights as set forth in this Complaint in restricting and making criminal association within their own homes; and

C) enjoin Defendant Inslee (1) from making a review of COVID-19 vaccines by a Western states' workgroup a condition precedent to access by Washingtonians to the vaccines, permitting our access to COVID-19 vaccines on the same timeline as residents of the United States generally; (2) to make clear to the Federal government and Washingtonians that Washington State is immediately prepared to receive, distribute, and vaccinate Washingtonians; and (3) to assure that any Western states' workgroup review, should Defendant Inslee desire it, undertake its work *concurrently* with vaccinating Washingtonians, causing no delay to Washingtonians' access to COVID-19 vaccines; and

D) enjoin Defendant Inslee from using the Office of Governor in public statements made by any means that serve to undermine public confidence in COVID-19 vaccines without first approaching this Court with specific and substantiated scientific evidence rendered by the clear consensus of scientific opinion, including scientists then on staff at the FDA and/or Centers for Disease Control and Prevention, and obtaining permission from this Court to do so.

E) enjoin Defendant Inslee's proclamation dated November 15, 2020, in whole; alternatively enjoin the proclamation in part, striking any prohibition on Plaintiff and Washingtonians from association in our homes and striking the related criminal penalty for exercising such right; and

F) award Plaintiff her reasonable attorneys' fees, costs, and expenses associated with these proceedings in accordance with 42 U.S.C. § 1988 and other applicable law; and

G) grant such other further equitable and legal relief as this Court finds just and proper.


Respectfully submitted,

_____

Jennifer Korjus, Esq., Plaintiff, pro se
Virginia St. Bar No. 29895
(retired; license no longer active)
8655 Sunset LN NW
Seabeck, WA 98380
360-550-4179
mtview98380@gmail.com